On December 16th, 1929, I filed a memorandum disposing of the issue raised in the above-entitled cause and endorsed it: "Not to be published in the official or unofficial reports," and in it said that the conclusions I had reached should be stated and that an opinion would be filed later. For the better understanding of the facts I herewith now include the memorandum then filed, which is as follows:
"The facts with which the chancellor is obliged to deal are in effect these:
"On November 23d 1929, a bill was filed in this court, in which the Eisler Electric Corporation is complainant, and the Neonlite Corporation of America is defendant. The allegations of the bill of complaint are verified by the president of the complainant corporation, and to it are annexed a consent to appointment of custodial receivers, executed by the president of defendant corporation.
"On the filing of this bill of complaint and the affidavit and the consent thereto annexed, the chancellor, upon the advice of Vice-Chancellor Backes, made an order appointing custodial receivers of the defendant corporation, and directing that corporation, its creditors and stockholders, to show cause before the chancellor, at Newark, on December 2d 1929, why an injunction should not issue pursuant to the prayer of the bill, and why a statutory receiver should not be appointed to take charge of the property and estate, books and papers of the defendant corporation. Since then proceedings therein have been adjourned, and are still pending before Vice-Chancellor Backes, because of the complications hereinafter referred to.
"The bill of complaint in the above-stated case was filed on Monday, November 25th, 1929, and upon the filing of that bill and the verifying affidavit thereto annexed, an order was *Page 711 
made by the chancellor upon the advice of Vice-Chancellor Fallon, directing the defendant corporation to show cause at the chancery chambers in Jersey City, on Monday, December 2d 1929, why a receiver should not be appointed for the said defendant, and why an injunction should not issue against the said defendant, pursuant to the statute in such case made and provided.
"On November 27th, 1929, Mr. Feinberg, the solicitor of the complainant herein, learned of the filing of the bill of complaint, and of the making of the order to show cause in the Eisler suit.
"The matter came on to be heard before Vice-Chancellor Fallon, and no one appearing in behalf of the defendant, Vice-Chancellor Fallon advised a decree appointing a statutory receiver of the defendant corporation, which order the chancellor signed, and which is now sought to be vacated and set aside. The chancellor accepts the advice of the vice-chancellors and signs the orders advised by them. Now for the first time the status of the cases against the Neonlite corporation has been brought to his attention.
"The above matter has been quite fully argued, and time being of pressing importance, I will state the conclusions which I have reached, and file an opinion later. These conclusions are, that the first bill, the one filed by the Eisler Electric Corporation, will be sustained, and the second bill, the one filed by Scranton Button Company, will be dismissed and the receiver appointed in that case will be discharged. All further proceedings in theEisler Case, which is before Vice-Chancellor Backes, will be had before him. He will take up the threads where those proceedings were halted by the filing of the second bill, the appointment of a receiver therein and the motion to dismiss that bill and discharge the receiver."
In Schenck v. Yard, 86 Atl. Rep. 81, I decided a contest between parties filing two bills for partition, sustaining the first bill filed.
The contest here is between parties filing two different bills, one after the other, having for their object the appointment of a receiver for a corporation alleged to be insolvent. *Page 712 
It has already been held that the first bill shall prevail and be continued, and that the second one shall be dismissed.
Receivers are arms of the court of chancery. See Seidler v.Branford Restaurant, 97 N.J. Eq. 531, 535. And the appointment of receivers in the first suit put the property of defendant corporation in custodia legis. 31 C.J. 356.
Where a court has acquired jurisdiction over the funds of an insolvent corporation and has appointed receivers to administer them, a co-ordinate branch of the same court cannot take the funds out of the hands of such receivers and place them in possession of others appointed by it in another proceeding.People v. Murray Hill Bank, 41 N.Y. Supp. 804; S.C.,10 N.Y. App. Div. 328.
The bill in the Eisler Electric Co. v. Neonlite Corporation
was filed November 23d 1929, is a class bill, and states defendant is a corporation with its principal place of business at 500 Chancellor avenue, Irvington, New Jersey. The bill in theScranton Button Co. v. Neonlite Corporation was filed November 25th, 1929 (two days later), and avers that the defendant company was organized under the General Corporation act of this state, but did not state where its place of business was. As a fact, Irvington is in Essex county, which clothed a vice-chancellor sitting in Newark with jurisdiction to entertain an application for injunction and the appointment of a receiver, under chancery rule 130, subdiv. 5a, promulgated September 25th, 1922, which provides that applications under that rule shall be made to a member of the court who regularly sits at chambers in or near the locality in which the cause of action arises. If the application in the second case were made to a vice-chancellor in Jersey City, as an emergency, under the rule, the order to show cause should have been made returnable at chambers in or approximately most accessible to the locality in which the cause of action arose. And that meant Newark, in Essex county. The rule (130, subdiv. 5a) for greater certainty, is here inserted:
"Applications for interlocutory injunctions and other writs and orders under rule 130 shall be made to a member of the court who regularly sits at chambers in or near the locality *Page 713 
in which the causes of action arise, and when two or more such chambers are equally, or nearly equally, accessible to the locality in which the causes of action arise, choice may be made of locality; but this rule shall not operate to prevent applications in the first instance to be made to other members of the court when those of the locality may not be available, provided, that in cases of emergency, such applications may be made in the first instance to any other member of the court available; and such writs and orders shall be made returnable at chambers in, or approximately most accessible to, the locality in which the causes of action arise, but in vacation such writs and orders may be made returnable at chambers where, at such times, members of the court sit for the transaction of business, in or approximately most accessible to the locality in which the causes of action arise; it being the intent of this rule to require applications to be made, and hearings to be had, in the vicinage, as nearly as may be practicable."
Although the court of chancery is a court of state-wide jurisdiction and its processes run into every corner of the commonwealth, nevertheless it came to pass that in many cases a concern would be located, say, in Atlantic City, with witnesses there, c., and creditors would often go before a vice-chancellor in Essex or Hudson counties, get an order to show cause and compel the attendance of the foreign defendants in that locality, with books and witnesses, c., and afterwards obtain a reference there, to the very great inconvenience of the defendant, and that provoked the rule in question.
It is pertinent here to remark what the Practice act provides in the matter of venue. Comp. Stat. p. 4113 §§ 201, 202, 203.
They are as follows:
"201. Every local action shall be tried in the county where the lands in question are situate or the cause of action arose, unless the supreme court in actions pending therein shall order the trial to be at the bar of the supreme court," c.
"202. An action merely transitory shall at the discretion of the court be tried in the county in which the cause of action arose, or the plaintiff or defendant reside at the time of instituting such action, or if the defendant be a non-resident, in the county in which process was served upon him. *Page 714 
"203. In actions pending in the supreme court, a justice * * * may grant a rule to show cause * * * why the venue should not be changed to some other county than that in which it is laid in the declaration," c.
The matter of venue seems to be always under the discretion of the court. In Kelly v. Haugh, 60 N.J. Law 124, it was held that the defendant in a transitory action has the right to have his case tried in the county where the cause of action arose, that being also the county in which the plaintiff and defendant lived. The laying of the venue in the county where the summon is served on the defendant is in disregard of that right. That was a suit for slander brought under the Practice act, wherein it was provided that an action merely transitory shall, at the discretion of the court, be tried in the county in which the cause of action arose or the plaintiff or defendant reside at the time of instituting such action, or if the defendant be not an inhabitant of this state, in the county in which process shall be served upon him. The statute gave the defendant the right to have his case tried in the county of Cape May, that being not only the county in which the cause of action arose but also that in which the plaintiff and himself lived. The laying of the venue in the county of Camden, where the summon was served, was in disregard of that right and the defendant was entitled to a rule altering the venue from Camden to Cape May.
In Chancellor v. Morris, 82 N.J. Law 14, it was held that under § 202 of the Practice act the venue might be laid by the plaintiff in any one of four several counties according to a certain fact, but if only one of the contemplated situations existed the venue must be laid accordingly, which would be the place of trial unless changed by the court under § 203. And it was further held that in that case the venue should have been laid in the county in which the defendant resided since none of the other contingencies existed. It was further held that assuming that the convenience of the persons for whom the action was brought would be considered under § 203, as if they were plaintiffs, the convenience of the defendant was equally entitled to consideration, and where the *Page 715 
conveniences off-set each other, a statutory venue should prevail; the venue was changed from Atlantic to Monmouth, because there was no authority to lay it elsewhere, and no sufficient reason shown for a change of venue in conformity with the statute.
In Metcufski v. Phila., c., Ry. Co., 97 N.J. Law 100, it was held (at p. 102) that § 202 of the Practice act relative to venue, while not intended to confer or limit the jurisdiction of our courts, yet operates as a recognition of the extent of such jurisdiction in actions merely transitory; in a suit against a corporation the venue should be laid in the county where its principal office is located, citing Thorn v. Central RailroadCo., infra.
In Thorn v. Central Railroad Co., 26 N.J. Law 121, the plaintiff resided in the county of Essex and the cause of action arose there. Defendant had its principal office in Essex. The venue was laid in Somerset. It was held that the venue should be laid in the county where the principal office of the defendant railroad was located, that being considered its place of residence. The venue was changed to Essex.
In Keeley v. Belmar, 97 N.J. Law 98, the court said (at p.99), that under special circumstances the court will change the venue from one to another of the designated counties, provided for in the Practice act; it is an appeal addressed to the sound discretion of the court.
There is no statute which provides for venue in the court of chancery, and the chancellor is at liberty of course to adopt any reasonable rule in the premises. There was no rule on the subject until that promulgated in 1922, and the question is, how far have the vice-chancellors the power to relax or dispense with any rule where it shall be manifest to them that adherence to it would work surprise or injustice.
As I said In re Appointment of Vice-Chancellors: their powersand duties, 105 N.J. Eq. 759, that those officials, as now constituted, that is, appointed by the chancellor (within their respective spheres as head masters of the court and as advisers of the chancellor) are constitutional officers, is perfectly apparent. While actually the *Page 716 
vice-chancellors are head masters of the court and advisers of the chancellor, nevertheless, in reality and in theory and contemplation of law, they act as independent judges in chancery; they have their own calendars, hear causes, write their own opinions, and then advise the chancellor to sign the decrees they make, which he necessarily does as the only way to keep pace with the business of the court. See Gregory v. Gregory, 67 N.J. Eq. 7.
Now, the rule of venue prescribed in rule 130, subdiv. 5a, is one which the chancellor has the power to make. However, like the rule of venue at law prescribed in the Practice act, it is subject to change by the court itself, and under special circumstances will be changed from one place to another in the sound discretion of the court.
As the vice-chancellors are judges in chancery they may, when a case is properly before them, relax or dispense with one of the rules of practice where it shall be manifest that strict adherence to it would work surprise or injustice. Rule 4, giving that power, is as follows:
"These rules shall be considered as general rules for the government of the court and the conduct of causes, and as the design of them is to facilitate business and advance justice, they may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work surprise or injustice."
Subdivision 5a of rule 130 was promulgated September 25th, 1922, and has never yet been construed by the court. It was adopted as a matter of convenience, that is, to require applications to be made in the locality where the causes of action arise, and in the case of a defendant company having its principal office or place of business in Newark would require application there and not elsewhere. Theretofore, complainants were allowed to select a member of the court in practically any locality of the state.
I am now called upon to give effect to this rule and to say exactly what it means, and I have no hesitation in declaring that it is a rule which the vice-chancellors are not at liberty to disregard. This rule must be applied by the various members *Page 717 
of the court accordingly as it is written. After jurisdiction of a cause is acquired by a vice-chancellor, whether by a special reference to hear the cause or in virtue of any of the subdivisions of rule 130 (where a special order of reference is not necessary), the vice-chancellor, as already remarked, being a judge of the court, may relax or dispense with any rule which shall be a rule of practice in the case before him; but not the rule clothing members of the court with jurisdiction. He must acquire jurisdiction before he can dispense with any rule, but he cannot dispense with any rule for the purpose of acquiring jurisdiction. This being so, it certainly follows that Vice-Chancellor Fallon could not acquire jurisdiction of the case at bar, except, perhaps (if applied to in the first instance), to make an order to show cause therein and send it to Essex county for determination of that order on its return. That he did not do.
The bill in the Eisler Case, filed November 23d 1929, before Vice-Chancellor Backes, prayed inter alia for the appointment of a receiver according to the statutes of this state and in accordance with the general equity powers of the court. It was duly verified. Upon its presentation "sufficient reason having been shown requiring immediate appointment of custodial receivers * * * pending hearing on the application for appointment of a statutory receiver," and the company consenting thereto, two custodial receivers were appointed in an order advised by Vice-Chancellor Backes, pending that hearing.
The bill in the Scranton Button Company, duly verified, was filed before Vice-Chancellor Fallon two days later, and prayedinter alia for the appointment of a receiver according to the form of the statute in such case made and provided, with the usual powers. On the presentation of this bill to him, Vice-Chancellor Fallon made an order that the defendant corporation show cause why a receiver should not be appointed according to the statute; and on its return, counsel for the Scranton Button Company, knowing that the other bill had been filed and receivers appointed thereunder and jurisdiction acquired by Vice-Chancellor Backes, nevertheless, *Page 718 
moved Vice-Chancellor Fallon and secured from him the appointment of a receiver for the creditors and stockholders of the defendant corporation; the vice-chancellor thereupon making such an order. Learning of these facts, I made an order on the Scranton Button Company to show cause before me in this case why an order should not be made dismissing the bill herein and why the order appointing a receiver made by Vice-Chancellor Fallon should not be vacated and set aside and the receiver discharged. On the return of that order, after argument by counsel for both sides, I made an order dismissing the bill, discharging the receiver appointed by Vice-Chancellor Fallon, and thus ended this litigation. Thereafter, the Eisler Case proceeded before Vice-Chancellor Backes.
This cause is sui generis. It is not like that class of cases where suits are started one after the other for the same relief but in different courts. These are two suits in the same court and it is intolerable that after a suit for a receiver by bill which must be addressed to the chancellor, is commenced before one of the vice-chancellors as a matter of proper practice, that another suit in the same court, addressed to the chancellor as it must be, should be started before another vice-chancellor and that he should assume jurisdiction. Therefore, as above stated,rule 130, subdiv. 5a, shall hereafter be strictly adhered to by the vice-chancellors, and they, if applied to, shall refer the matter to a vice-chancellor of the vicinage, as in the rule set forth in terms. Of course, the chancellor may under special circumstances change the venue from one place to another; in an appeal to the sound discretion of the court, as was said inKeeley v. Belmar, supra.
Of course there is no practical difference between a matter being heard in Newark or in Jersey City. They are only a few miles apart; and a given place, while in Essex county, may be nearer to the chancery chambers in Jersey City than it is to those in Newark; nevertheless, sometimes the rule will work arbitrarily, but probably never disadvantageously. However, the rule, as stated, must hereafter be observed.
While applications may be made to the chancellor in proper *Page 719 
cases to order the venue specially, as where the witnesses reside in or near a place where a vice-chancellor's court is held, or where many and large and important documents to be offered in evidence are located, or both; nevertheless, such motion will not be entertained where it is apparent that the contest is one to get before a particular judge or to avoid going before another. And this, too, must be strictly regarded.