On July 13th, 1933, Vice-Chancellor Fallon advised a consent decree of dismissal in the above entitled causes which had been consolidated by an order advised by him on the same day. Several stockholders of the defendant corporation questioning the good faith of the parties to that proceeding filed petitions to set aside the decree, to intervene as complainants in the consolidated cause, and to proceed with the original suit to final hearing. The argument on the petitions was had some months ago, and upon its conclusion counsel requested, and were given a limited time within which to submit their briefs. Some of the briefs were presented within the period allotted, while others were received within the past week.
These suits are incident to and arise from proceedings instituted by the complainant Richard Reid Rogers in the federal courts and in the Supreme Court of the State of New York. It seems necessary to present part of the background which led eventually to the filing of the petitions herein.
The defendant The American Tobacco Company is a corporation of the State of New Jersey. On July 28th, 1930, at a special meeting of its stockholders, a plan, allegedly authorized under the provisions of chapter 175 of the laws of 1920, page 354, was presented enabling its directors to offer and allot for purchase by its employees shares of its unissued common B stock. It provided for the distribution *Page 472 
of 312,968 shares to directors, officers and employees at prices not less than the par value thereof upon certain terms and conditions. Each stockholder was given a copy thereof with a notice of the time and place of the meeting. The complainant Rogers attended the meeting and read or caused to be read a statement opposing the plan, and threatened legal action if any appreciable amount of stock were issued thereunder for a price substantially less than its market value. The plan was adopted by an alleged vote of more than two-thirds of each class present and voting at the meeting. Thereafter, in 1931, pursuant to the adopted plan, the directors allotted for purchase at par 56,712 shares of common stock B to a list of 535 persons including the president, other officers and employees of the company. The plan named The Guaranty Trust Company of New York and Junius Parker trustees. They, under a trust agreement, purchased the 56,712 shares at a price of $25 per share for the allotted shares which they were to hold for the benefit of the allottees until they were fully reimbursed. The trust agreement provided for the return to the company of all, or a portion, of the individual allotments upon the happening of certain contingencies.
After the plan was placed in operation Rogers thereupon instituted two stockholder suits in the Supreme Court of New York wherein he questioned the validity of the plan. One suit was against The American Tobacco Company and certain of its directors, and the other was against The Guaranty Trust Company and Junius Parker as trustees, and others. Those suits were subsequently removed to the federal court for the Southern District of New York, and were thereafter consolidated. Rogers also instituted mandamus proceedings in the New York State Supreme Court to obtain an examination of the books and records of the company. He was successful in the latter suit and was allowed to examine the books and records of the company, after which he amended his bills of complaint. Under the amended bills he sought to have the defendants enjoined from carrying out the plan, to have the subscription contracts canceled, the stock returned to the company, the money advanced by employees *Page 473 
returned, and the issuance of the 56,712 shares declared void; or, in the alternative if it could not be returned, to have the individual defendants account therefor.
The defendants filed answers to the suits. Rogers moved to strike out the defenses and demanded judgment on the pleadings. His motion was denied by the United States District Court and a judgment dismissing the bills of complaint without prejudice to the enforcement of complainant's right in the courts of New Jersey was entered.
Rogers then appealed to the United States Circuit Court of Appeals which court decided that the plan and the allotment of the stock thereunder were valid and dismissed the bill of complaint on its merits. He then went to the United States Supreme Court on a writ of certiorari. That court on January 23d 1933, reversed the decision of the Circuit Court of Appeals in so far as it had decided the merits of the case and reinstated the earlier judgment of the United States District Court dismissing the bills of complaint without prejudice to the enforcement of the complainant's rights, if any, in the courts of New Jersey. Rogers v. Guaranty Trust Company of New York,288 U.S. 123 (Vol. 53, October term, page 295); 77 L.Ed. 652.
On January 28th, 1933, after the decision of the United States Supreme Court was announced, the complainant Mathews filed his bill of complaint in this court. Approximately a week thereafter, or on February 6th, 1933, Rogers filed his bill of complaint here. Those two suits raised the issues (a) whether the plan adopted by the stockholders authorizing the directors to offer from time to time an aggregate of 312,968 shares of the company's common stock B to those actively engaged in the conduct of the company's business for purchase at not less than par was valid; and (b) whether the 56,712 shares of stock allotted pursuant to said plan to 535 allottees were validly issued under said plan.
Notwithstanding the object of these two suits, both complainants allege, among other things, that they had not waived their rights to subscribe to the shares allotted under the plan. Answers were filed to these suits and both causes were referred to Vice-Chancellor Fallon. *Page 474 
On May 29th, 1933, the United States Supreme Court handed down its decision holding that article XII of the by-laws of the corporation, which had been attacked by Rogers, was valid when it was adopted, but the court remanded the case for further proceedings to the United States District Court for the Southern District of New York.
Rogers had prosecuted three appeals to the United States Circuit Court of Appeals, and two writs of certiorari to the United States Supreme Court before he filed his bill in this court.
In the litigation instituted by Rogers in the New York State and federal courts which had been pending for two years or more, no stockholders had intervened.
On April 5th, 1933, Rogers attended a stockholders' meeting of the defendant corporation and there stated that in his opinion the litigation which had been prosecuted for the period above stated was injuring the business of the company and should be settled, upon terms fair and just to the company.
A short while thereafter negotiations were had among the litigants concerning the possibility of settlement of all the pending litigation. Rogers deposed that he was influenced to consider settlement because the business of the company had been efficiently conducted by the management and he did not want to disrupt the management or interfere with the continued operation of the company (Rogers' deposition, page 38). A settlement would permit the management to go ahead and continue to develop the company. (Rogers' deposition, page 92.) The notoriety attendant upon the litigation was tending to injure the business of the company. (Rogers' deposition, page 90.)
A settlement finally was agreed upon which was substantially as follows (Rogers' deposition, pages 51-55):
"1. Stock Sale Plan of 1930. 27,500 shares of this stock, to be furnished by the directors and non-employee subscribers, shall be returned to the company, together with all dividends paid thereon to the Guaranty Trust Company.
From the total amount authorized to be issued to employees under the plan, or approximately 312,000 shares, there will be deducted, as representing the above stock returned by directors and others and stock issued to minor employees, the sum of approximately 52,000 shares, which stock will not be re-issued under the plan. *Page 475 
With respect to any future issue of stock under the plan, it is agreed with respect to each quota so issued that such quota will be submitted from time to time to the stockholders for their approval, by a majority vote of those present, upon a full, frank and detailed disclosure by the directors of the price at which the stock is to be offered for subscription, the amount to go to each individual director or principal officer and the amount to go to each other employee of the company, which other employees may be designated by a number rather than by a name.
The directors by resolution are to declare as a policy controlling them in any possible future issue of stock under the plan, that in submitting such issue to the stockholders and advising the same, due regard will be given by the directors to the current market value of the stock as well as to other considerations set forth in the plan.
In the consolidated action of Mathews v. American Tobacco Company and Rogers v. American Tobacco Company, an agreed judgment will be entered incorporating the agreed settlement as far as practicable upon the terms hereinbefore set forth.
If the Vice-Chancellor should decline to allow such a judgment to be entered, the terms of the general settlement shall be regarded as nugatory, but may thereafter be taken up for separate adjustment as far as possible at the suggestion of either party.
The Guaranty Trust Company and the Treasurer of the company shall furnish counsel a statement respecting the stock returned under the proposed settlement.
This statement will include an adjustment between the company and The Guaranty Trust Company in regard to the refund by the company to The Guaranty Trust Company under this agreement, of any money paid by it for stock not returned by reason of this settlement or by reason of resignations or death of any employee.
2. Under the suit of Rogers v. Hill, involving by-law No. 12 of 1912; owing to the temporary emergency in the business of the company, the distributions to be made under this by-law hereafter are fixed for the year 1933 at the net profits of the company remaining after deducting the sum of $13,000,000; for the year 1934 at the net profits of the company remaining after deducting $14,250,000, and for all subsequent years after deducting $15,500,000.
On and after this year, if the net profits should exceed the sum of $32,500,000, the net profit distribution will be calculated upon the basis of 10% upon total profits before profit distribution up to $32,500,000, 9% for the next $2,500,000, 8% for the next $2,500,000, 7% for the next $2,500,000, 6% for the next $2,500,000, and 5% thereafter.
This agreement is to be made effective by whatever legal steps are required or are expedient; but in the meantime, the President and Vice-Presidents of the company will agree in writing to accept a modification of profit distribution in accordance with this agreement, and no future Vice-President will be elected to office without a consent upon his part limiting his profit distribution to not more than the amounts herein specified. *Page 476 
It is likewise agreed that it is advisable to obtain from the stockholders a modification of the by-law in accordance with the foregoing terms.
3. Rogers v. Hill, involving the stock plans prior to 1930. Inasmuch as there has been returned to the company under the stock plan of 1929 by way of rescission or cancellation 100,500 shares, in which rescission credit is given to the company for the special credits referred to in the above action, in which the stock is calculated to cost the company upon rescission approximately $65.00 per share and, inasmuch as any settlement of this particular litigation is intermingled with and made dependent upon the bonus litigation — referred to in section 2, it is agreed that this suit will be dismissed without costs to either party as against the other and that no further action will be taken in the claim filed against the executors of the Penn Estate or against the other directors referred to in the various plans set forth in that action.
The question of fees is to be left open to immediate adjustment, and it is understood that the terms of this settlement are contingent upon the agreement with respect to the amount of the fees, which, if not agreed upon, will permit either party to withdraw.
The form of the various court orders, resolutions and agreements to be entered into to render this settlement effective are left open to mutual adjustment, the design being to make such orders, resolutions and agreements effective to carry out as far as legally possible the terms of this settlement.
This is the substance of our understanding, errors and omissions excepted."
On July 13th, 1933, the proceedings in the New York State Court, the United States District Court for the Southern District of New York, and this court were dismissed by decrees of dismissal. None of the decrees incorporated all the terms of the settlement. Each court, the complainants and the defendants contend, was informed of the terms of the settlement of the respective issues in the other suits. The petitioners dispute that contention and say that counsel's concealment of the terms of settlement was tantamount to, and in fact, a fraud. They say that at the time Vice-Chancellor Fallon signed the decree of dismissal in this court, he was not informed of the fact that the defendant corporation agreed to pay to Rogers a fee of $263,000, and that it further arranged to deposit a fund to secure the payment of such income taxes for which he would be liable by reason of the receipt of his fee in addition to his other income, so as to leave him the $263,000 as a net fee. The withdrawals *Page 477 
from the fund for such taxes, they say, have been approximately $254,000. In addition, they allege there has been paid Rogers' expenses to those associated with him in the suits, approximately $25,000; making a total payment in the Rogers suits for counsel fees and disbursements of approximately $542,000. There was also paid to the counsel and attorneys in connection with the Mathews litigation $70,000 for counsel fees, expenses and disbursements.
The complainants and the defendants contend that the benefits to the company resulting from the various suits amounted to substantially in excess of $10,000,000.
The entry of the decree of dismissal in these suits without notice to the stockholders and a full disclosure to the court of all payments under the alleged circumstances, the petitioners declare was a fraud on the company and its stockholders. They assert that they had no knowledge of the terms of settlement, or the amount of money paid thereunder by the defendant corporation, until evidence was submitted in the federal court in July, 1939, in certain disbarment proceedings then pending; and that upon receiving information of the terms of settlement, they then filed the petitions herein.
Furthermore the petitioners claim that the fraudulent character of the transaction resulting in a dismissal of the suit is borne out by the failure of the complainants to give the notice required by rule 32 of this court. That rule provides:
"32. In every suit brought by a stockholder of a corporation, in behalf of himself and other stockholders, for relief to which the corporation is entitled, the complainant shall immediately, on filing the bill of complaint and issuing a subpoena to answer, give such notice of the pendency and the object of the suit to the other stockholders of said corporation as the Chancellor shall in each case by order direct."
Moreover petitioners say that the Vice-Chancellor, to whom these causes had been referred by the Chancellor, had no power to waive compliance with rule 32 but that he, as a Vice-Chancellor of this court, notwithstanding the formal reference of the consolidated causes to him, never acquired jurisdiction thereof because of the failure to give such notice.
With that contention I cannot agree. The instant case is *Page 478 
distinguishable from The Scranton Button Co. v. NeonliteCorporation of America, 105 N.J. Eq. 708; 149 Atl. Rep. 369.
There, two applications for the appointment of statutory receivers for the defendant corporation, having its principal place of business in Irvington, New Jersey, had been made.
Under Chancery rule 130, now 128, there was a general order of reference in such cases to any Vice-Chancellor sitting in Vicinage No. 2, but not to any other Vice-Chancellor except under the circumstances provided for in the rule. The Chancellor held that Vice-Chancellor Fallon, who did not sit in Vicinage No. 2, was not authorized to dispense with this rule in order to give himself jurisdiction to consider a cause not referred to him by general rule or specific order of reference.
The parties complainant and defendant state that the announcement of the institution of the suits was carried by all the newspapers circulating in New York and its vicinity; that statements summarizing the settlement were made therein; and that the news accounts were widely and extensively published throughout the country.
By virtue of the order of reference in the two causes, as consolidated, Vice-Chancellor Fallon had power under the authority given him by Chancery rule 4 to relax or dispense with any rule of this court, a strict adherence to which would work injustice.
The proofs submitted to me show that in addition to the newspaper publicity which followed upon the institution of the suits, the company itself caused to be mailed to each stockholder on March 16th, 1933, together with the notice of the annual meeting to be held on April 5th, 1933, a pamphlet, a copy of which was submitted with the affidavit of one of the company's officials. That pamphlet, after rehearsing the basis of the allotments under the stock plan and the distribution of that stock, the amount of salaries paid to employees who were members of the board of directors and such additional compensation as those individuals received, proceeded to advise the stockholders of the institution and the pendency of the two suits in this court. *Page 479 
To have required the complainant (no obligation rested upon the defendant company to do so) to give notice of the institution of the suits to over 40,000 stockholders would, in view of the newspaper publicity and the dissemination by the company itself of the fact of the pendency of the litigation have laid upon the complainants an undue burden and it is reasonable to assume that Vice-Chancellor Fallon, familiar with the rule as he must have been, concluded not to require compliance with it.
Between August 19th, 1939, and December 13th, 1939, seven petitions were filed in the United States District Court for the Southern District of New York, allegedly on behalf of the stockholders of The American Tobacco Company, owning in the aggregate 520 shares, in which the petitioners sought to have the decree entered in that court on July 13th, 1933, vacated contending that the settlement was a fraud on the company and the stockholders and that the entry of the decree of dismissal in that court was a fraud on the court. On March 27th, 1940, Judge Leibell, the presiding judge, decided that there was no fraud in the settlement, that no fraud had been imposed upon the court, that counsel fees paid to complainant were moderate, justly earned and properly paid by the company, and, therefore, that the decree would not be vacated.
The petitions filed in this court ask to have the decree of dismissal entered in these causes in 1933 vacated on substantially the same grounds as were alleged in the petitions filed in the United States District Court for the Southern District of New York.
It may be mentioned, that as a result of the suits and their settlement, all the stock issued in 1931 under the stock subscription plan was returned to the company except that held by some 521 allottees, most all of whom were subordinate employees. They are not defendants to these suits.
Petitioner Leo Bondy asks leave to go beyond the issues of the original bill and by amendment and supplemental bill to include in this cause the subject-matter of the suits instituted by Rogers and others in the New York State and federal courts. *Page 480 
The company opposes the granting of the prayer of the petitions upon the following grounds: (1) The petitioners and their predecessors in title have acquiesced in the distributions made by the company under its stock subscription plan and, therefore, they have no standing either in their own right or in the right of the company to question those transactions; (2) the complainants had the right to control the litigation and to dismiss the bills of complaint; neither the corporation nor any one else was prejudiced by such dismissal; (3) the issue of whether the settlement was a fraud on the corporation or its stockholders had been determined by a court of competent jurisdiction adversely to the claims of the petitioners and isres judicata; (4) there was no fraud on the court; (5) the settlement was a fair settlement which was beneficial to the corporation and its stockholders and was not tainted with any fraud.
The complainants' suits are admittedly derivative or class suits. They were instituted for the benefit of the corporation and the stockholders. Ellerman v. Chicago Junction Railways,c., Co., 49 N.J. Eq. 217; 23 Atl. Rep. 287; Willoughby v.Chicago Junction Railways, c., Co., 50 N.J. Eq. 656;25 Atl. Rep. 277; Goodbody v. Delaney, 80 N.J. Eq. 417;83 Atl. Rep. 988; In re Lawyers and Home-Makers Building and Loan Association,128 N.J. Eq. 22; 15 Atl. Rep. 2d 137.
The petitioners, in effect, argue that since the consolidated suits were derivative, or stockholders', suits instituted for the benefit of the corporation and not for the direct benefit of the complainants, that the complainants' powers were circumscribed and limited to the institution of legal proceedings without right to move for, or consent to, a dismissal thereof; that their functions were merely procedural. In support of their point, they invoke the ruling laid down in Naspo v. Summit Sweets Shoppe,Inc., 106 N.J. Eq. 49; 150 Atl. Rep. 199, wherein the court, among other things, said:
"Notwithstanding that the complainant in the instant case is a $75 creditor of the defendant, it must be borne in mind that it is not only his grievance that must be regarded and protected by the court, but the bill of complaint, being in the *Page 481 
nature of a class bill, is not only for the benefit of the complainant but of all creditors and stockholders of the defendant. * * * The recent case of Liss v. Security FinanceCo. (Docket 76, page 677), clearly indicates the rule of law to be that in a class bill of the character now before the court a complainant and defendant may not, by agreement between themselves, effect a dismissal of the bill."
That ruling was followed in Auburn Button Works, Inc., v.Perryman Electric Co., Inc., 107 N.J. Eq. 554; 154 Atl. Rep. 1.
The complainants do not concede that they were without right to move to dismiss their bills of complaint, and they rely, to some extent, upon the principle enunciated by the court in Goodbody
v. Delaney, supra.
Vice-Chancellor Bigelow in the case of White v. British TypeInvestors, Inc., 130 N.J. Eq. 157; 21 Atl. Rep. 2d 681, gave consideration to the right of a stockholder in a derivative suit to consent to its dismissal. In that case, among other things, he said:
"The first cause of action is a representative or derivative suit. While the corporation is nominally a defendant, it is, in substance, the complainant, since the suit is prosecuted for its benefit and only indirectly for the benefit of complainant and other stockholders. Goodbody v. Delaney, 80 N.J. Eq. 417;Mayer v. Oxidation Products Co., 110 N.J. Eq. 141, 146. It is also a class suit. A plaintiff who sues not only for himself but in behalf of others of the same class, is not a trustee for the other members of the class to the extent of requiring him to carry on the litigation for their interest in opposition to his own, or after he has settled his claim. He controls thelitigation and may discontinue his action at will, until there bea decree affecting the rights of the class or until others of theclass have intervened in the suit. The defendants have an equal corresponding right to dismiss the suit upon settling with the plaintiff or on securing his consent. But after others have intervened or a decree has been taken, the original parties lose their power to dismiss the action, except for cause, or with the consent of those who have intervened or whose rights are affected by the decree. Hirshfeld *Page 482 
v. Fitzgerald (N.Y.), 51 N.E. Rep. 997, and numerous cases cited in notes in 8 A.L.R. 950, and 91 A.L.R. 572. See, also,Collins v. Taylor's Ex'rs, 4 N.J. Eq. 163. These general rules are well settled." (Italics mine.)
The right of a stockholder to discontinue a suit brought by him on behalf of the company or other stockholders has been sustained also by a decision of the New York Court of Appeals in the case of Hirshfeld v. Fitzgerald, 157 N.Y. 166; 51 N.E. Rep. 997.
The court in that case, among other things, said:
"Does the plaintiff, in bringing a representative action, become a trustee for the other creditors? We think not; at leastto such an extent as to require him to carry on the litigationfor their interests in opposition to his own, or after he hassettled his claim. It is true that the capital stock of a corporation is a trust fund for the security of the creditors, and the amount recoverable from the stockholders under the statute in addition to the capital stock may be treated as a like security; but, as we have shown, the creditor is not permitted to bring an action in his own behalf alone for a contribution by the stockholders, for in that way he would obtain a preference for himself. He must bring the action for himself and on behalf, not of all the creditors, but on behalf of those who choose to come in and share the benefits and expenses of the litigation. His relation with the other creditors is one that the law creates.He assumes to prosecute on their behalf only in so far as hispersonal interests require. He makes no agreement with them, andthey do not accept him as a trustee to represent them or bindthem by his action. They have the right to come in at any time, and, as soon as they do, they may take part in the management of the action." (Italics mine.)
The court further said:
"We think, however, that in this state there is no escape from the claim made by the appellants that where an action is broughtby a plaintiff on behalf of himself and others similarly situatedwho come in and share in the expenses, he has the right tocontrol the action, and may continue, compromise, abandon, ordiscontinue it at pleasure until a creditor *Page 483 similarly situated has procured an order to be made a party tothe action, or has served a notice of motion to be brought in, oruntil interlocutory judgment is entered." Italics mine.)
The same court in Brinckerhoff v. Bostwick, 99 N.Y. 185,
said:
"It is true, that at any time before judgment, the originalplaintiff, before the others were made parties, could havediscontinued the suit or could have settled his individualdamages with the defendants, and have executed a release whichwould have been effectual as to him. But if he had prosecuted the action to judgment, then the judgment would have been for the benefit of all the stockholders, and he would then have ceased to have control over it, because the rights of the other stockholders would at once have attached thereto. The bringing of the action by the original plaintiff did not prevent the other stockholders from bringing similar actions." (Italics mine.)
Brinckerhoff v. Bostwick was cited with approval inGoodbody v. Delaney, supra.
To the same effect is the ruling in Manning v. MercantileTrust Co., 75 N.Y.S. 168, where the court said:
"It has been authoritatively settled in this state that a plaintiff who brings an action in behalf of himself and others similarly situated has the right to control the action, and may continue, compromise, abandon, or discontinue it at pleasure until a person similarly situated has procured an order to be made a party to the action, or has served a notice of motion to be brought in, or until interlocutory judgment has been entered.Hirshfeld v. Fitzgerald, 157 N.Y. 166-184; 51 N.E. Rep. 997;46 L.R.A. 839. When, however, a person similarly situated has been made a party plaintiff, he becomes vested with an interest in the subject-matter of the action, and thereafter nothing can be done by the original plaintiff in derogation of the rights and interests of the added co-plaintiff. Brinckerhoff v. Bostwick,99 N.Y. 194; 1 N.E. Rep. 663; Belmont Nail Co. v. Columbia Ironand Steel Co. (C.C.), 46 Fed. Rep. 336."
See Earl v. Brewer (App. Div., N.Y., 1936), 289 N.Y.S. *Page 484 150. In Dresdner v. Goldman Sachs Trading Corp.,269 N.Y.S. 360, the court said:
"The evident purpose of the plaintiffs, whether they proceed by an independent action or as parties to the one consolidated, is that they may have some control over the litigation, and thus be present on any trial to protect and secure their rights and prevent a discontinuance of the action by the original plaintiffs. Brinckerhoff v. Bostwick, supra, p. 195 of 99N Y; 1 N.E. Rep. 663. This is a highly legitimate purpose. There is nothing to prevent the defendants, before judgment, from buying their peace with the plaintiffs in the consolidated action by means of a private settlement (Brinckerhoff v. Bostwick,supra, p. 194 N.Y., 1 N.E. Rep. 663; Handford v. Storie, 2Simons Stuart, 196, 198), leaving other stockholders to seek their remedy by a new action, if the statute of limitations has not run against them."
The principle underlying the above cases has been recognized by this court. In McAlpin v. Universal Tobacco Co.,57 Atl. Rep. 418, a derivative suit had been commenced by stockholders of the Universal Tobacco Company on behalf of themselves and all other stockholders who should come in and contribute to the expense of the suit. The bill prayed, among other things, that a certain voting trust be declared void, that the issue and negotiation of certain bonds be restrained, that the mortgage securing them be canceled and that the bonds which had been issued, be surrendered. Subsequent to the commencement of the suit, three additional stockholders were permitted to intervene as complainants. Later, a settlement was agreed upon between the original complainants and the defendants, and counsel for the defendants moved to dismiss the bill. The intervening complainants opposed the motion and it was denied. Vice-Chancellor Reed said, however:
"It is undoubtedly true that a complainant or a number of complainants can dismiss, or consent to the dismissal of, his or their bill at any time before decree. And this power resides in the complainants although they sue as some of a class, and expressly state that the suit is not only for the benefit of themselves, but also for the benefit of such others *Page 485 
of the class as may choose to come in and share the expenses of the suit. But this exclusive power of control over the litigation ceases when a decree is signed, and in this state it also ends when one of the class — not an original complainant — is, by order of the court, admitted as a party complainant. After such a judicial recognition, this new party must be reckoned with in any final disposition of the cause."
In Thompson v. Fisler, 33 N.J. Eq. 480, Chancellor Runyon, speaking of a bill filed by a creditor in behalf of himself and all other creditors who should come in and contribute to the expense of the suit said:
"It is indeed established that a creditor who files such a bill has complete and absolute dominion over it until decree, and he may have the bill dismissed on receiving satisfaction for his claim and the costs of suit. 1 Dan. Ch. Pr. 235; Innes v.Lansing, 7 Paige 583; Pemberton v. Topham, 1 Beav. 316;Handford v. Storie, 2 Sim. St. 196; Wood v. Westfall,Younge 305; Mattison v. Demarest, 1 Rob. (N.Y.) 717;McDougald v. Dougherty, 11 Geo. 570; Stephenson v. Taverners,9 Gratt. 398; 2 Barb. Ch. Pr. 169. And the debtor defendant may, before decree, obtain a dismissal on those terms. But such absolute dominion over the suit cannot be exercised by the original complainant alone if there be other complainants. In such case, if the defendant debtor would obtain a dismissal, he must satisfy all of them."
In Pierce v. Old Dominion Copper Mining and Smelting Co.,67 N.J. Eq. 399; 58 Atl. Rep. 319, Vice-Chancellor Stevenson, in speaking of a suit by a creditor or stockholder for the appointment of a receiver under our statute said:
"It is well settled that when the decree has passed, disabling the corporation and establishing the conditions under which a distribution of assets will follow through a receiver, if there are any assets, the power of the particular stockholder or creditor who instituted the proceedings to control the decree is gone.
"This statutory action, as in suits brought by a creditor on behalf of himself and other creditors who may come into the suit, prior to decree, undoubtedly has so far the character of all actions, strictly inter partes, that the creditor instituting *Page 486 the action may discontinue it at any time provided no othercreditor has been allowed to intervene. Thompson v. Fisler,33 N.J. Eq. (6 Stew.) 490; 1 Dan. Ch. Pr. 235, 236; Bissell v.Besson, 47 N.J. Eq. (2 Dick.) 580, 584. `Such absolute dominion over the suit cannot be exercised by the original complainant alone if there be other complainants.' Thompson v.Fisler, supra." (Italics mine.)
The Old Dominion Copper Mining Co. Case was cited with approval on this point by the Court of Errors and Appeals inUmland v. United Public Service Co., 111 N.J. Eq. 613;163 Atl. Rep. 17.
While the complainants instituted these suits on behalf of the corporation or for the benefit of themselves and the stockholders, certainly those acts imply no obligation upon them to conduct the suits to final hearing. They are not fettered with any such rule of procedure. They are entitled to be relieved of the burden of suit at any time that they feel there is justification for it.
I do not find that the complainant stockholders hold the rights or obligations of trustees. A trustee sues at the expense of the trust. He has a duty to observe in the institution and prosecution of a suit if the trust estate requires such action. Here, in the instant case, the stockholders prosecuted suits at their own expense; they were under no duty to initiate the proceedings or to prosecute them after they had been instituted. Certain other stockholders had the right to intervene in the suit and share the burden and the management of it. None of them intervened. Discontinuance of a suit settles none of the issues involved and bars neither the claim of the corporation nor any other stockholder suing in its right.
The settlements of the suits which were effected by the decrees hereinabove mentioned, appear to be a general settlement for all the suits. The decrees of dismissal were entered in the three courts where they were pending on the same date pursuant to the general settlement. In the United States District Court for the Southern District of New York proceeding where the petitioners assumed to represent, and protect the rights of, the defendant company in proceedings in the nature of a bill of review (Rogers v. Hill, 34 F. Supp. 358), Judge Leibell in his opinion said in part: *Page 487 
"We must not lose sight of the fact that the settlement in July, 1933, was a general settlement, that it contemplated the disposition of all the pending stockholders' suits and that the fee Rogers received covered his services in all of these suits. The fact that it was a general settlement has a bearing also on the adequacy of the settlement of the bonus action in this court. Some of the counsel for the present applicants argue that the court on these present applications cannot consider all that Rogers recovered for the corporation in all his lawsuits, but only the benefits the corporation received from the settlement of bonus litigation in this court, in determining whether Rogers made a proper settlement of the bonus litigation. I do not agree with this contention. These applicants claim that Rogers failed to get a fair settlement of this bonus action and that he so failed because he was paid a large fee, which admittedly he had earned on the whole general settlement." (P. 364.)
"Rogers has explained that since this was a general settlement, involving suits in three different courts, no one court could fix the fee for his services in the litigations in the other two courts. Further, the services and the results obtained had to be viewed as a whole." (P. 366.)
"The resolution adopted by the board of directors on July 12th, 1933, and the agreement signed by the directors with the corporation on the same day made the readjustment of future bonuses under article XII of the by-laws and the adoption of a new policy in respect to the 1930 stock allotment plan, conditional upon the settlement of the New Jersey and the New York Supreme Court actions, involving stock allotments, and the settlement of the bonus action in this court. I don't see how the benefits of the settlement could be retained under two of the law suits and in effect set aside as to one, by reopening this bonus action." (P. 367.)
Judge Leibell found no fraud in the settlement and he denied the relief the petitioners sought.
It has long been settled in New Jersey that the decision in a stockholder's derivative suit is conclusive in a subsequent suit brought by another stockholder for the purpose of litigating the questions which have been determined in the prior *Page 488 
suit. Willoughby v. Chicago Junction Railways, c., Co.,supra. In this case, a second stockholder's suit was instituted subsequent to the dismissal after a hearing on the merits of a prior bill seeking the same relief. The court held that the complainants were bound by the former adjudication of the questions arising in the prior suit. The court there said:
"Neither this suit nor the Ellerman suit was in the right of the respective complainants; they were the nominal, but not the real, parties complainant. They were suing merely as representing the company, to establish and enforce its rights; the relief to be obtained was not and is not for their individual benefit, but for the benefit of the corporation as such. In these cases the corporation itself is a necessary and was and is actually a party defendant; in these it was and is represented by counsel, answered the bills and has taken part by counsel, in the discussion of the case. The decree in the Ellerman suit certainly binds the company. In the face of that decree neither the old nor a new board of directors could attack it except by an appeal. The former decree could be successfully pleaded as a bar to an action instituted in the name of the company by authorized agents who might desire to relitigate the questions decided. If the company and its authorized representatives are then concluded by such a decree, how can a stockholder, suing in behalf of the company, be permitted to relitigate questions which are conclusive upon the corporation?"
In Baldwin v. Iowa State Traveling Men's Association,283 U.S. 522, Mr. Justice Roberts, speaking for the United States Supreme Court, among other things, said:
"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause."
I find no evidence of fraud in the decree of dismissal advised *Page 489 
by Vice-Chancellor Fallon in the suits instituted by the complainants in this court. The decree was consented to by counsel for the complainants and counsel for the defendants, and while, perhaps, it did not incorporate therein the terms of settlement in full, it did recite a portion of the settlement applicable to the issues presented in the causes.
I am satisfied that none of the parties to the suit, including their counsel, practiced any deception on the court before or at the time the decree of dismissal was advised herein. They advised the court that a general settlement of all the suits was pending. Judge Leibell in his aforesaid opinion also observed:
"But the applicants urge that even assuming the fee to be reasonable, Rogers concealed from the courts the fact that he was receiving a fee. We must first consider, in weighing that charge, whether there was any duty imposed on Rogers to state to the courts in which his stockholders suits were being settled the fact that he was getting a fee and the amount thereof. Any judge passing on a settlement of any of the Rogers' suits would naturally assume that Rogers was receiving a fee and that The American Tobacco Company was paying it, in view of the fact that Rogers had conducted these litigations for almost three years and was concluding a very satisfactory settlement, the terms of which were set forth before all the courts in which the pending litigation was settled."
After the oral argument of this matter, application was made for leave to introduce in evidence an exemplified record of certain suits instituted in the New York Supreme Court and consolidated under the title of Heller et al. v. Boylan etal. (See 29 N.Y.S. 2d 653). Over objection of the petitioners the evidence was received as bearing on the question of res judicata. While I have concluded that it is not necessary to the decision of this cause for me to give consideration to the doctrine of res judicata as an answer to the relief sought by petitioners, nevertheless, the following may be enlightening.
Such suits were instituted by numerous stockholders to require the officers and directors of the corporation to account *Page 490 
to it for alleged excessive compensation received by them under article XII of the by-laws. After consolidation, those suits were heard by Mr. Justice Collins who filed his decision after the oral arguments were had in the instant causes. In those suits the question of the legality of the distributions made to the president and vice-presidents under article XII was fully litigated. This is the question which was left open by the decision of the United States Supreme Court in the Rogers suit originally instituted in the United States District Court for the Southern District of New York. Mr. Justice Collins sustained distributions made under article XII, finding only that in some instances errors had been made in the net profits under that article. He required the defendants to account for the amounts by which their shares had been increased by such errors.
Mr. Justice Collins in his decision in the Heller suit went extensively into the history of the plan, the payments thereunder and the litigation instituted by these complainants, and in the course of his observations said:
"Following Rogers' victory in the Supreme Court, and before the `investigation in equity' was launched, negotiations for adjustment were started. These eventuated in a settlement, from which the Company benefited — at the time of the settlement in July, 1933 — by $6,200,000 and a further saving of about $2,250,000 by March, 1940. Many more millions were saved — inasmuch as the settlement reduced the bonus base and the employee's stock subscription plan was revised. In addition, Rogers was paid a fee of $525,000, the net being $263,000 and the income tax thereon exhausting the remaining $262,000. Thus ended the Rogers campaign.
"But the echoes therefrom persisted. Seven stockholders, including three of the plaintiffs in this action (Heller, Wile and Mandelkor), and represented by most of the attorneys who appear for the plaintiffs here, assailed the settlement and sought to have it canceled on the ground that the huge fee to Rogers was in the nature of a bribe. He received it, accused the seven, without the knowledge of the court which approved the settlement, and in violation of his obligation to the Company, for whose benefit the litigation was prosecuted. In an *Page 491 
arresting opinion Judge Leibell rejected the petition and declined to disturb the settlement, holding it a most advantageous one for the corporation. Considering the benefits to the corporation, Rogers' fee of $525,000 was held earned and `moderate.' (Rogers v. Hill, D.C., 34 F. Supp. 358, 365.)
"It was in connection with the Rogers litigation that Chadbourne, Stanchfield Levy were paid $375,000 and which fee forms segment III of this case."
I have indicated that I see no evidence of fraud having been imposed upon any one in the settlement of the suits. I am convinced that the suits and the settlements were a benefit and an advantage to the defendant corporation and its stockholders.
The proposition of settlement was discussed at the stockholders' meetings and these petitioners had an opportunity to inform themselves as to its terms if they had attended the meetings.
Even though the complainants herein did not serve written notice to the 40,000 stockholders of the corporation of the proposition of settlement, I know of no rule that required them to issue such a notice and bear the expense thereof. The institution of these suits was widely advertised and proclaimed.
The petitioners have not indicated in the presentation of their argument in this matter whether or not they or their predecessors in title voted at the meeting of April 5th, 1933, to ratify and confirm the stock subscription plan which was involved in the suits in this court. They do not deny that they or their predecessors in title received a notice of the meeting or the pamphlet which contained full and complete information thereof.
It appears that most of the stock issued to the directors under the plan was returned to the company excepting an allotment to some 520 employees who had each received but a few shares. The stock distribution plan was modified so that every subsequent issue would be passed upon by the stockholders with knowledge to whom it was to be allotted, and in order that the market price of the stock would receive *Page 492 
due consideration in fixing the price to the allottees. The stock and money received under the 1929 plan by all the directors, excepting two who had resigned and one who had died, was returned to the company.
Rogers in his attack against the plan in his litigation against the defendants received no support from the other stockholders. He financed the litigation, and acted as his own counsel throughout the proceedings, and devoted hours, days, months, and years of labor in the preparation and prosecution of the litigation. His aim undoubtedly was to protect and preserve the rights and standing of the corporation and its stockholders. His attitude appeared to be entirely unselfish. He insisted upon an agreement of settlement that was fair to the company before there was any apparent discussion of an allowance to him for his expenditure of time and money in a burdensome task. His good faith has been passed upon favorably by other judicial tribunals, and his judgment in effecting the settlement aforesaid has been vindicated. I shall advise an order denying the prayer of the petition.